OPINION
John Collins appeals the judgment of the Greene County Common Pleas Court finding him guilty of two counts of felonious assault.
In September of 1998, Mike McCormick (hereinafter "Mike"), while at work, purchased from a woman named Leslie Collins, who, unbeknownst to Mike, was not related to John Collins, a trailer which she purported to sell for $2,500. At the purchase, Leslie Collins delivered to Mike a key to the trailer and its title, with the transferor listed and signed as John Collins. On October 1, 1998, Mike and his sister, Teresa, while on their way to work at the K. C. Lounge decided to go look at the trailer Mike had purchased. After parking in front of the trailer, they attempted to open the door but it was locked and Mike had left his key at his home. Mike decided to climb in a window which was missing the glass and unlock the door from the inside, letting his sister in through the door to show her the trailer.
Upon opening the door for his sister to enter, Teresa ran into the trailer screaming, and shut the door behind her. As soon as the door was shut, it was kicked open by Mr. Collins. Mr. Collins charged in accompanied by his dog and armed with a gun and an ax handle. Mr. Collins demanded, "Who sent you?" Although Mike attempted to explain that he had the title to this trailer, Mr. Collins struck Mike in the arm with the ax handle. Next, Mr. Collins struck Teresa with the ax handle across her back, knocking her to the floor. Then, Mr. Collins struck Mike in the head with the ax handle, causing a severe injury. At this point, Mike managed to run out the door and Mr. Collins pursued him, firing his gun, fortunately not hitting Mike. Mr. Collins then returned to the trailer where Teresa remained and struck her with the ax handle again. Finally, Teresa was able to flee from the trailer, jumped into her car and drove to her mother's home. Meanwhile, Mike had approached another trailer for help, whose owner called the police.
As a result of the blows struck by Mr. Collins, Teresa had to have her arm placed in a sling for two weeks and lost the use of it for over a month. Mike was taken to the hospital where he was diagnosed with an open skull fracture, requiring stitches to close the head wound. Further, Mike had to remain in the hospital for five days for observation and Mike was unable to return to work for two months.
At trial, Mr. Collins claimed that he was the rightful owner of the trailer which Mike and Teresa entered on October 1, 1998. Mr. Collins, living in the trailer next door, claimed that he observed Mike entering the trailer through the window and believed he was a burglar. Rather than calling the police, Mr. Collins armed himself and loosed his dog on Mike and Teresa. Mr. Collins asserts that once inside the trailer he yelled at Mike and Teresa to leave and that Mike and Teresa attacked him, provoking the assaults. Mr. Collins asserted that he was defending himself and his property. Although he never called the police to report a theft, Mr. Collins claims that the title and key to the trailer were stolen from his home at a previous unknown point in time. Additionally, Mr. Collins did not call the police to report the incident in the trailer between himself, Mike and Teresa, which he allegedly believed to be an attempted burglary.
Mr. Collins was indicted on November 25, 1998 with three counts of felonious assault, one with a firearm specification, all second degree felonies. A jury trial began on September 22, 1999, after a jury view of the trailer. On September 24, 1998, Mr. Collins was found guilty of two counts of felonious assault without firearm specifications. On January 13, 2000, Mr. Collins was sentenced to two years on each count, to be served consecutively.
Mr. Collins raises three assignments of error:
 1. THE TRIAL COURT ERRED TO PREJUDICE OF MR. COLLINS IN ITS HANDLING OF THE REQUESTED JURY VIEW.
 2. THE FINDINGS OF GUILTY BY THE JURY AS TO COUNTS ONE (1) AND THREE (3) WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 3. THE VERDICT OF THE TRIAL COURT IS NOT SUPPORTED BY THE SUFFICIENCY OF THE EVIDENCE.
 Appellant's first assignment of error:
Mr. Collins argues that the trial court erred to his prejudice by denying Mr. Collins' request for a jury view of the K. C. Lounge and by permitting the jury to be divided into small groups and taken by the local law enforcement on the jury view of the trailer. We disagree.
A trial court is authorized to allow a jury to view a chosen site by R.C. 2945.16, which states:
 When it is proper for the jurors to have a view of the place at which a material fact occurred, the trial court may order them to be conducted in a body, under the charge of the sheriff or other officer, to such place, which shall be shown to them by a person designated by the court.
 R.C. 2945.16. A trial court has a vast amount of discretion in determining whether or not to grant a jury view request and the trial court's determination will not be overturned on appeal absent an abuse of discretion. State v. Lundgren (1995), 73 Ohio St.3d 474. An abuse of discretion is more than mere error but must demonstrate an attitude on the part of the trial court which is arbitrary, unreasonable, or unconscionable. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217. The purpose of jury views is to help the jury understand the evidence, not to impeach or attack the credibility of witnesses. State v. Smith (1993), 90 Ohio App.3d 177; Langford v. Green
(Feb. 3, 1993), Summit App. No. 15673, unreported.
Mr. Collins argues that the trial court erred by denying his motion for a jury view of the K. C. Lounge. Mr. Collins argues that a jury view of the lounge would demonstrate that a reasonable person would not have bought a mobile home in a strip bar such as the K. C. Lounge. However, Mr. Collins' asserted value of the K. C. Lounge jury view would be to attack the credibility of Mike McCormick for having attempted to purchase a mobile home at a strip bar, which is a prohibited purpose of a jury view under Smith. Moreover, Mr. Collins could have offered photographs of the K.C. Lounge if he wished to attack Mike McCormick's credibility on the issue of his purchase of the mobile home, but he did not. As the asserted purpose of the requested jury view was improper, we see no abuse of discretion in the trial court's denial of the request.
Additionally, Mr. Collins argues that the trial court abused its discretion by allowing officers from the sheriff's office, which had arrested Mr. Collins, to take the jurors on the jury view of the trailer in two separate vehicles. Mr. Collins points to R.C. 2945.16 phrase "the trial court may order them to be conducted in a body," as requiring that the jurors travel together, not in separate vehicles. R.C. 2945.16
(emphasis added). Although the trial court may have erred in permitting the jurors to be separated, creating the possibility of separate experiences, Mr. Collins admits that "there is nothing on the record to show that any of the jurors were prejudiced by the manner in which they were taken to the jury view." (Appellant's brief, 8). Thus, Mr. Collins was not prejudiced by transporting the jurors in two vehicles. As to the alleged error in having officers from the sheriff's office which arrested Mr. Collins transport the jurors, R.C. 2945.16 provides for officers from the sheriff's department to transport the jurors and thus, the trial court's conduct in having the local sheriff's office transport the jurors was proper. Mr. Collins first assignment of error is without merit and overruled.
Appellant's second assignment of error:
Mr. Collins argues that the jury's verdict was against the manifest weight of the evidence because they did not find that the affirmative defenses of defense of property and self-defense applied. We disagree.
An appellate court should grant a new trial only in the rare case where the evidence weighs heavily against conviction. State v. Thompkins
(1997), 78 Ohio St.3d 380, 387. Substantial deference shall be given to a jury's determination of credibility. State v. Lawson (August 22, 1997), Montgomery App. No. 16288, unreported. Additionally, since police can be summoned with ease and rapidity, an individual may not resort to deadly force to remove a trespasser unless he has a reasonable fear for his safety. State v. Catlin (1990), 56 Ohio App.3d 75. The affirmative defense of self-defense places the burden of proof on the defendant by a preponderance of the evidence. State v. Caldwell (1992),79 Ohio App.3d 667. Even though a person acting in self-defense generally has no duty to retreat when the action occurs within the person's home, a person does have a duty to retreat where the aggressor has an equal right to be present in the home. State v. Walker (1991),74 Ohio App.3d 120.
 In the instant case, a factual dispute existed between Mr. Collins and Mike McCormick as to who owned the trailer. Mike McCormick possessed a notarized certificate of title with Mr. Collins' signature. Mr. Collins admitted that he wanted to sell the trailer so he would no longer have to pay the lot fees which were past due by several months. Moreover, Mr. Collins admitted that he was living in the trailer next door, not the trailer in which the altercation occurred. Thus, credible evidence existed to demonstrate that the trailer where the altercation occurred was not Mr. Collins' home and therefore, Mr. Collins had a duty to retreat when he charged at the McCormicks armed with a gun and ax handle. Further, since Mike McCormick had a signed, notarized title to the trailer, evidence existed to show that he had an equal right to be present in the trailer, which also would have given Mr. Collins a duty to retreat.
Also, two witnesses testified that Mr. Collins attacked the McCormicks immediately upon his entry into the trailer, when the McCormicks had not made a threatening movement toward Mr. Collins. Further, in arriving at its verdict the jury must not have found credible Mr. Collins' testimony that upon entering the trailer Mike McCormick, a man half of Mr. Collins' size, attacked Mr. Collins, who was armed with a gun and an ax handle and had his dog at his side. Further, since a property owner may only use deadly force to evict trespassers when he reasonably has a fear for his safety, the jury must have not found credible Mr. Collins' claim that he was in fear for his safety, particularly when afterward he went to a softball game rather than call the police and report what he claimed was an attempted burglary. Thus, the issue of credibility rests in the jury's hands and they simply did not find Mr. Collins' testimony, which asserted the affirmative defenses of defense of property and self-defense, credible. Therefore, sufficient evidence existed from which the jury could find Mr. Collins guilty of the crimes and the verdict was not against the manifest weight of the evidence. Mr. Collins' second assignment of error is without merit and is overruled.
Appellant's third assignment of error:
Mr. Collins argues that the state of Ohio failed to prove that Mr. Collins inflicted "serious physical harm" on Mike McCormick, which was necessary for his conviction. We disagree.
When an appellate court reviews the sufficiency of the evidence on appeal it must "examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." State v. Jenks
(1991), 61 Ohio St.3d 259. Thus, the relevant inquiry is "whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." Id. R.C. 2901.01(A)(5)(b) and (e) provides that "serious physical harm" includes in its definition "any physical harm that carries a substantial risk of death" and "any physical harm that involves acute pain of such duration as to result in substantial suffering or that involves any degree of prolonged or intractable pain." R.C. 2901.01(A)(5)(b) (e).
During the trial, Dr. Edward Detar, a physician who had treated Mike McCormick while he was in the hospital, testified that Mike was diagnosed with an open skull fracture and an epidural bleed, which he testified carried a substantial risk of death. (Tr. 55-57). Additionally, Mike McCormick testified that he was hospitalized for five days as a result of Mr. Collins' blows and even upon release from the hospital he remained in great pain. (Tr. 104). Mike testified that he did not feel relief from the pain until two months later. (Tr. 106). Therefore, when this testimony is viewed in a light most favorable to the prosecution, a rational trier of fact could have found that the element of "serious physical harm" was met as to the felonious assault against Mike McCormick, either because of the substantial risk of death from the injuries or the prolonged period of pain Mike McCormick suffered. Thus, Mr. Collins' third assignment of error is without merit and overruled.
The judgment of the trial court is affirmed.
 ______________________ FREDERICK N. YOUNG, J.
WOLFF, P. J. and BROGAN, J., concur.